### GONZALEZ v. ZACHRY.
### No. 9612.

Court of Civil Appeals of Texas.
San Antonio.
June 19, 1935.

Rehearing Denied July 17, 1935.

John L. George and N. A. Rector, both of Laredo, for appellant.

Raymond, Algee & Alvarado, of Laredo, for appellee.

SMITH, Justice.

The appeal involves the claim of the constitutional homestead exemption asserted by Manuela M. Gonzalez upon certain property owned by her at the inception of a street paving lien sought to be impressed thereon by virtue of a certificate issued to H. B. Zachry by the city of Laredo on March 9, 1929.

On May 21, 1930, Zachry instituted this suit against Mrs. Gonzalez to recover accrued installments on the certificate, and for foreclosure of the asserted lien, and recovered accordingly, in a trial before the court, without a jury. Mrs. Gonzalez's children were impleaded, and concluded, as codefendants below, and are appellants here, but for convenience, they need not be specifically carried through the ramifications of this opinion. Mrs. Gonzalez will be designated as appellant and Zachry as appellee.

The validity of the paving certificate, and the amount of the money judgment thereon, are not questioned here by appellant, who complains only of the decree of foreclosure.

Appellant paid numerous accruing installments upon the certificate, but defaulted when no longer financially able to meet

them, and on September 15, 1931, sold the property to J. J. Garcia, who, continuing, for a while, to pay the installments, also became delinquent. The sale of the property to Garcia was for a recited consideration, among other items, which included no cash payment, of the grantee's assumption of the "payment of a certain paving lien against the property herein conveyed, amounting to $900," and a "vendor's lien promissory note," for $836.63, payable in installments to the grantor, but no part of which was ever paid. It was provided in the conveyance that "it is expressly agreed and stipulated that the vendor's lien is retained against the above described property, premises and improvements, until the above described note and all interest thereon are fully paid according to its face and tenor, effect and reading, when this deed shall become absolute." It was in pursuance of its assumption that Garcia, the grantee, made numerous payments of installments upon the paving debt; but he discontinued such payments in May, 1933, and died in December thereafter. In the meantime appellee had instituted this action against appellant, upon the accrued installments, and upon Garcia's death amended and, impleading Garcia's surviving wife and children as parties defendant, sued for the unpaid balance of the whole debt.

In her answer appellant set up her claim of homestead exemption, as against the paving lien, and by cross-action sought recovery of her superior title as against the Garcias, as survivors of her grantee, and recovered accordingly, subject, however, to the paving lien established in favor of appellee. The trial court decreed an appropriate adjustment of equities upon the sale of the property to satisfy appellee's lien. The Garcias are not parties to the appeal, which is prosecuted by the Gonzalezes only.

Appellee's claim of valid lien rests upon two grounds: First, that the property, conceded to have been appellant's homestead at one time, had been abandoned and was not such at the time of the issuance of the paving certificate; and, second, that appellant, being single at the time of the sale of the property to Garcia, could create a lien thereon, even though it was then her homestead, and that by the sale to Garcia (with the requirement that he assume the debt due upon "a certain paving lien against the property" conveyed to him, and that the vendor's lien be reserved to secure such payment) such lien was thereby effec-

tually created in favor of its holder. The appeal will be considered and determined with reference to those two contentions, in their order.

And, first, did the evidence support the implied finding of the trial judge that the homestead character did not attach to the property at the time of the attempted fixing of the lien thereon? The evidence upon this issue is quite voluminous, and prolix. Appellant and her then living husband acquired and moved upon the property, and made it their homestead, in 1900. They did not then have, or thereafter acquire, any other property as a homestead. Ten years later the husband died, but appellant and her numerous children, all of whom were born to the union there, continued to dwell in the home. In time, however, the children grew up, went their several ways; some of them married and established their own homes, which they respectively maintain. The evidence shows that in 1924 appellant's children, then residing in San Antonio, contracted to purchase a dwelling there as a home for their mother, placing the title in her name, although it seems to be undisputed that she had no part in the formation or execution of this purpose or plan, which originated with, and was executed by, her children, upon their own impulses and credit, and which some of them moved into and thereafter occupied as their home. The evidence is vague and unsatisfactory about this transaction, except that it does appear, definitely and conclusively, that appellant did not elect or select the new home, or participate in its purchase, or ever reside in it, except to go there to live with two sons already occupying it, after she sold her home place to Garcia. Until then she had continued, irregularly, it is true, but none the less certainly, to spend part of the time in the Laredo home, and the remainder with her children in San Antonio, alternating between the two havens in her pathetic search for peace and comfort, rendered precarious by her inability to regularly provide funds for her own sustenance. It is undisputed that during her absences from the old home, from 1919 up to the time of its sale to Garcia, she left her niece in charge of, and living upon, the premises to take care of it for her. So is it undisputed that during all that period she kept her household furniture in the place. It is true that the evidence showed the place disintegrated in those lean years into the mere semblance of a dwelling

place, but that process of disintegration did not deprive it of its innate character, for, though "unsatisfactory, and in all its appointments mean; though it advertises the thriftless poverty of its proprietors, and is a caricature of the princely possibility of the exemption laws," yet, nevertheless, it may still be the home of a family, and is as certainly embraced in the spirit and purpose, as well as the letter, of the Constitution, as would the finest mansion be.

We have very carefully read and considered the entire statement of facts, and have kept in mind the rule that the evidence must be construed most favorably to the implied findings of the trial court, but are unable to avoid the firm conviction that it is wholly insufficient in this case to establish the fact of abandonment. It is perfectly obvious that appellant had not acquired a new homestead, within the true meaning of the rule that a new home must be acquired before the presumption of abandonment of the old may be indulged; for, no matter what purposes her children had in contracting for the San Antonio place, appellant steadfastly failed to acquiesce in the plan, and kept her eyes turned, just as steadfastly, to the old home. In such case proof of abandonment of the old home must be clear and beyond all reasonable ground of dispute  22 Tex. Jur. p. 82, § 54, and authorities there cited.

Certainly, irregular, or periodical, absences of the claimant, to visit with, or seek sustenance from, her children, cannot be construed as an abandonment, or as cogent evidence of an intention to abandon. Id.; Shepherd v. Cassiday, 20 Tex. 24, 70 Am. Dec. 372. We hold that the evidence was not sufficient to show the homestead had been abandoned at the time the paving debt was created, and that the asserted lien did not then attach.

■■ The record shows that when appellant realized that she could not continue to meet the installment payments upon the paving debt, she sold and conveyed her property to Garcia, upon condition, as a part of the consideration for the conveyance, that he would pay off that debt, to secure which the vendor's lien was retained in the conveyance. This, Garcia assumed to do, and the holder of the paving debt acquiesced in this shift of obligors, and Garcia paid to him several of the accruing installments. By this process Garcia took the position of principal and appellant that of surety, upon the paving debt, and the agreement having been acquiesced in and partly performed by the parties, their rights and liabilities were thereby fixed, and could not be thereafter altered by the acts of the obligors alone. Hill v. Hoeldtke, 104 Tex. 594, 142 S. W. 871.

The agreement of Garcia, the grantee, to pay the paving debt (as a part of the recited consideration, $2,000), constituted that obligation just as much a part of the purchase price of the property as was the obligation to pay the vendor's lien note to the grantor. Burton-Lingo Co. v. Standard (Tex. Civ. App.) 217 S. W. 446.

And since the grantee's assumption of the paving debt was a part of the consideration for the conveyance of the property, equity will imply a lien upon the property to secure payment of that debt. Fidelity Union Fire Ins. Co. v. Cain (Tex. Civ. App.) 28 S.W.(2d) 833. In this case that implication is supported by the implied finding of the trial judge, upon sufficient evidence, that appellant knew, and intended, that her conveyance would have the effect of fixing the asserted lien.

While we have held that appellant had not previously abandoned her homestead right in the property involved, and that the involuntary lien sought to be imposed thereon would not be validated here, yet we are further obliged to take cognizance of and enforce the rule that under our laws a surviving wife has the power to mortgage the community homestead to secure a debt against the community estate, such as this. Smith v. Von Hutton, 75 Tex. 625, 13 S. W. 18; Watts v. Miller, 76 Tex. 13, 13 S. W. 16; Spencer v. Schell, 107 Tex. 44, 173 S. W. 867. Under that power, and under the authorities previously cited in this opinion, when appellant conveyed the property to Garcia, and retained a lien upon the property to secure his assumed obligation to pay the paving debt, that lien inured to the benefit of appellee, as the holder of the paving debt, and the trial court properly rendered judgment establishing and foreclosing the lien.

The judgment is affirmed.

On Motion for Rehearing.

It was stated in the original opinion that appellee impleaded appellant's children in the suit. This was error, albeit an immaterial error, and in deference to appellant's request, we make this correction thereof.

So was it stated in the original opinion that the record shows that in the deed from appellant to Garcia the vendor's lien was retained to secure payment of the paving debt. Appellant complains that this statement is incorrect. It was not intended to say, by that statement, that such lien was retained by express language, but that it was retained by necessary implication.

With this correction and explanation, appellant's motion will be overruled.