Earl DELLEY et al., Appellants,

v.

The UNKNOWN STOCKHOLDERS OF the BROTHERLY AND SISTERLY CLUB OF CHRIST, INC., et al., Appellees.

No. 756.

Court of Civil Appeals of Texas, Tyler.

April 18, 1974.

Rehearing Denied May 16, 1974.

Goodwin & Jarrel, Willis Jarrel, Tyler, for appellant Earl Delley.

Kirkpatrick, Grant, Dennis & Ammerman, Ronald Ned Dennis, Marshall, for appellant Ruby Watley Brown.

Blanchard, Walker, O'Quin & Roberts, John T. Cox, Jr., Shreveport, La., Abney & Baldwin, Gaines Baldwin, Marshall, for appellee Arkansas Louisiana Gas Co.

MOORE, Justice.

This is an action in trespass to try title. The suit was originally instituted by Ruby Watley Brown, plaintiff, as sole heir of her father and mother, W. W. Watley and Minnie Elizabeth Watley, both deceased. Plaintiff sought a recovery of title and possession of the remaining portion of a two-acre tract of land after a part thereof had been condemned by the State of Texas for highway purposes, and to recover the sum of $13,761.60 paid into the registry of the County Court as damages for the land taken and the destruction of a nursing home situated thereon. Plaintiff instituted suit against defendants Earl Delley and Arkansas Louisiana Gas Company (hereinafter referred to as the "Gas Company"), as well as other defendants not parties to this appeal. Defendant Delley answered with a plea of not guilty and filed a cross action in trespass to try title. Defendant Arkansas Louisiana Gas Company answered with a plea of not guilty and affirmatively alleged that it was entitled to a first lien on the land and funds deposited for the taking by virtue of a deed executed by The Brotherly and Sisterly Club of Christ, Inc. (hereinafter referred to as the "Nursing Home"), to W. W. Watley, plaintiff's father, and defendant Earl Delley, wherein Watley and Delley expressly agreed to assume a certain debt owed by the Nursing Home to the Gas Company. The Gas Company prayed for a recovery of the debt and for foreclosure of its equitable lien.

Ruby Watley Brown, administratrix of the estate of Minnie Elizabeth Watley, intervened in the suit seeking a recovery of title to the undivided community interest in the land owned by her mother at the time of her death.

After a trial before the court, sitting without a jury, the trial court rendered judgment finding that the Gas Company was entitled to a first lien and ordered that the debt, together with attorney's fees and interest in the amount of $6,612.56, be paid to the Gas Company out of the funds on deposit in the County Court. The judgment further awarded plaintiff Ruby Watley Brown, individually and as administratrix of the Estate of Minnie Elizabeth Watley, seventy percent (70%) and the defendant, Earl Delley, thirty percent (30%) of the title to the land and the funds remaining in the hands of the County Clerk of Harrison County, Texas, after the satisfaction of the judgment awarded to the Gas Company. A "take nothing" judgment was rendered against all other parties and the judgment against them became final. Earl Delley duly perfected an appeal to this court. While Ruby Watley Brown, individually, also attempted to appeal, the record shows that neither her motion for new trial, notice of appeal nor appeal bond were timely filed. For convenience the parties will hereinafter be referred to by their respective names rather than as appellant and appellee.

The trial court filed extensive findings of fact and conclusions of law. The following facts, stated in chronological order, are not in dispute. The two-acre tract of land in question was acquired by The Brotherly and Sisterly Club of Christ, Inc., on November 14, 1959. It was used for the purpose of operating a nursing home thereon. In 1962, the Nursing Home contracted with the Gas Company for the installation of a central air conditioning system in the building. Payment was secured by a note and chattel mortgage. Financial difficulties seem to have plagued business from the beginning and as a result the Nursing Home soon fell in arrears on its payments to the Gas Company, as well as numerous other creditors. On February 2, 1967, the indebtedness to the Gas Company was renewed and extended. Finally on July 5, 1967, the directors of the Nursing Home corporation passed a resolution authorizing the officers to sell the land and business for the sum of $100.00, provided the purchaser agreed to assume the debts due and owing to seven specified creditors, including the Gas Company. In February, 1968, the corporation sold the premises to

W. W. Watley and Earl Delley. A deed was executed conveying W. W. Watley seventy percent (70%) and Earl Delley thirty percent (30%) of the property. The corporate resolution authorizing the sale contained a stipulation that the grantees agreed to assume the indebtedness of the Gas Company and other creditors. The resolution was incorporated in the deed. At the time Watley and Delley accepted the deed, the Nursing Home owed the Gas Company the sum of $3,847.41. After the purchase Watley continued to operate the Nursing Home. The business continued to suffer financial problems, and as a result Watley, as superintendent, commenced borrowing money from Delley for operating expenses. Finally on May 14, 1968, W. W. Watley and wife, M. E. Watley, borrowed the sum of $2,000.00 from Delley. As security for the loan, they jointly executed a promissory note and a deed of trust on their seventy percent (70%) interest in the Nursing Home premises. The note was payable in two installments, the first in the amount of $1,000.00, being payable one year after date and the second two years after date. On October 6, 1968, W. W. Watley died intestate, leaving as his sole survivors his wife, M. E. Watley, and plaintiff, Ruby Watley Brown. On July 14, 1970, Minnie Elizabeth Watley died intestate, leaving Ruby Watley Brown as her sole surviving heir. Thus, Ruby Watley Brown, under the laws of descent and distribution, inherited the seventy percent (70%) interest in the premises owned by her father and mother subject to the debt due and owing the Gas Company and the debt due and owing Delley. On August 4, 1970, the trustee, acting under the power conferred by the deed of trust, sold the property to Earl Delley for the sum of $500.00. As a result Earl Delley became the owner of record title to the land in question. On April 13, 1971, a judgment was rendered in the County Court of Harrison County condemning approximately one-half of the land for highway purposes. As a result, the Nursing Home, including the air conditioning equipment installed by

the Gas Company, was taken. The County Court judgment awarded damages for the taking in the amount of $13,761.60 which was deposited in the registry of the County Court payable to all parties involved in the present suit.

Title to the land, as well as title to the funds, stood in this posture at the time plaintiff Ruby Watley Brown filed the present trespass to try title action on June 10, 1971. We will hereinafter undertake to determine the title owned by each of the parties under the record before us.

## THE TITLE OF ARKANSAS LOUISIANA GAS COMPANY

The judgment in favor of the Gas Company recites as follows:

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the defendant, Arkansas Louisiana Gas Company, has a claim and valid first lien against the Thirteen Thousand, Seven Hundred, Sixty-one and $^{60}/_{100}$ Dollars ($13,761.60) now on deposit in the office of the defendant, Glenn Link, County Clerk of Harrison County, Texas, and that the defendant, Arkansas Louisiana Gas Company recover from such funds the sum of Five Thousand, Seven Hundred Seventy-six and $^{36}/_{100}$ Dollars ($5,776.36) principal and interest, together with the sum of Eight Hundred, Thirty-six and $^{20}/_{100}$ Dollars ($836.20) attorneys fees, with interest on such amounts from this date at the rate of six percent (6%) per annum, together with its costs."

In this connection the trial court found (1) that both Earl Delley and Ruby Brown, individually and as administratrix, claim title by, through and under a deed from The Brotherly and Sisterly Club of Christ, Inc., to W. W. Watley and Earl Delley dated February ——, 1968, (2) that a part of the consideration for the conveyance was the assumption and agreement to pay by W. W. Watley and Earl Delley various indebtednesses owed by the Nurs-

ing Home at the time of the conveyance, including the debt owed to the Gas Company, (3) that the undisputed evidence showed that on the date of the conveyance there was an unpaid balance due on the indebtedness to the Gas Company for the air conditioning equipment in the amount of $3,645.76, and (4) an unpaid balance due the company upon an open account in the amount of $201.65.

While the record fails to disclose the date of the deed or the date of delivery, it shows that it was finally acknowledged on March 13, 1968, and filed for record on April 3, 1968. The resolution authorizing the officers of the Nursing Home corporation to sell the land was copied in the deed verbatim and recites, in part, as follows: "The sale shall be for a consideration of $100.00 cash and the assumption by the purchaser of all liability and responsibility to pay the following, and only the following, debts now owing by the corporation: (1) Arkansas Louisiana Gas Corporation * * *." Nowhere in the deed is there an express reservation of a vendor's lien, nor does the deed contain an express reservation of superior title.

Earl Delley and Ruby Brown, individually and as administratrix, attack the judgment in favor of the Gas Company. They contend that the trial court erred in finding that the Gas Company was entitled to a first lien on funds in the registry of the County Court of Harrison County on various grounds. We overrule their contentions with one qualification hereafter explained.

■ The assumption by the grantees in a deed to pay a debt due and owing a third party constitutes a part of the purchase money. The well established rule is that where no express vendor's lien is reserved in the deed, a vendor's lien nevertheless arises by operation of law to secure the payment of the purchase money, and where the purchase money is not paid, the vendor has an implied equitable lien which may be established and foreclosed in a suit

brought for this purpose. Briscoe v. Bronaugh, 1 Tex. 326 (1846); Zapata v. Torres, 464 S.W.2d 926 (Tex.Civ.App., Dallas, 1971, n. w. h.); 58 Tex.Jur.2d sec. 335, p. 575, et seq. It is well settled that where a part of the purchase money is the assumption of an indebtedness due to a third party, who has no claim on the land, the vendor's lien arises in favor of such a third party to secure such indebtedness. Burton-Lingo Co. v. Standard, 217 S.W. 446 (Tex.Civ.App., Fort Worth, 1919, n. w. h.); Gonzalez v. Zachry, 84 S.W.2d 855 (Tex.Civ.App., San Antonio, 1935, writ ref.); Etter v. Tuck, 101 S.W.2d 843 (Tex.Civ.App., Dallas, 1937, n. w. h.). The stipulation in the deed obligating Watley and Delley to assume the indebtedness due the Gas Company is contractual in nature and any party interested in such a contract has a right to enforce it. When Watley and Delley accepted the deed containing the stipulation of the assumption of the indebtedness to the Gas Company, it constituted an unconditional contractual undertaking on them and their successors in title to pay the same. This being true, an equitable first lien was created in favor of the Gas Company and Delley and Brown are in no position to question the validity of the same.

■ Next, they contend that even though a valid lien existed, the trial court erred in ordering the entire amount of the debt to be paid out of the funds paid into the registry of the County Court rather than ordering a foreclosure against the land. In this connection they argue that the lien extended only to the remainder of the land and not to the funds. We do not agree.

In 27 Am.Jur.2d, sec. 257, it is said:

"There appears to be no doubt that where mortgaged property is taken by eminent domain, or damaged to such an extent that the security of the mortgage is impaired, the mortgagee's rights against the land follow the award, and he may have the mortgage debt satisfied

out of that fund in advance of other creditors of the mortgagor, if he takes the burden upon himself of enforcing his rights in that regard. * * *

* * * * * *

"In any event, the greatly prevailing view is that where mortgaged land is taken or damaged for public use, the mortgagee is entitled either to the entire award or to so much thereof as is necessary to compensate him for his interest or damage. * * *"

While the lien involved here is an equitable lien, as distinguished from an express lien usually found in mortgages, we see no reason why the foregoing rule should not be applicable. State v. Moody Estate, 156 F.2d 698 (5th Cir. 1946).

The Gas Company sought the court's aid upon equitable principles in the collection of a debt contractually promised by appellants and those under whom they claim. Since the debt was a contractual obligation, we think the Gas Company is clearly entitled to have the debt satisfied out of the funds to the exclusion of Delley and Brown, especially since all other claimants were disposed of by the judgment entered by the court below. Moreover, we think the trial court was authorized, upon equitable principles, to order the entire debt paid out of the funds without resorting to a foreclosure on the remaining land. City of Chicago v. Salinger, 384 Ill. 515, 52 N.E.2d 184, 154 A.L.R. 1104. The payment of the debt out of the funds would, of course, have the effect of extinguishing the company's equitable lien on the remaining land.

█ Delley and Brown further contend that the trial court erred in refusing to hold that the lien was barred by the two and four year statute of limitations, Articles 5526 and 5527, Vernon's Ann.Tex.St. The points are without merit and are therefore overruled.

They argue first that the debt was barred by the two and four year statutes at the time the grantees accepted the deed and assumed payment of the debt. Therefore they contend that the no lien was created by the deed.

In connection with the two year statute, they take the position that since the grantees did not sign the deed, the contract was oral and therefore was barred because the undisputed evidence shows the Gas Company did not commence suit within two years. As we view the record, the two year statute of limitations is not controlling in that the contract involved here was a written contract and is therefore controlled by the four year statute of limitations.

While the grantees did not sign the deed, the deed in question was a written contract binding alike upon the grantors and grantees, whether signed by the grantees or not. Its acceptance by the grantees imposed upon them and their successors in title an obligation to pay the consideration recited therein. It has been expressly held that a written contract of this type need not in terms contain a promise to pay nor a recital of such promise. Orbeck v. Alfei, 276 S.W. 947 (Tex.Civ.App., Waco, 1925); 37 Tex.Jur.2d sec. 38, p. 144. Since the contract made the basis of the suit was not oral, but written, the two year statute is not applicable.

Next, it is contended that even though the deed amounts to a contract in writing, the suit was barred by the four year statute of limitations since the record shows without dispute that no action was commenced by the Gas Company within four years after the grantees accepted the deed assuming the obligation.

Article 5527 provides that all actions for debt, when the indebtedness is evidenced by or founded upon a contract in writing, must be commenced within four years after the cause of action accrues.

██ Where a vendor executes a conveyance and retains no express vendor's lien or superior lien in the deed or otherwise, an implied vendor's lien on the land is lost when the debt is barred by the stat-

ute of limitations. Johnson v. Dyer, 19 Tex.Civ.App. 602, 47 S.W. 727 (1898, err. ref.); Zeigel v. Magee, 176 S.W. 631 (Tex.Civ.App., San Antonio, 1915, err. ref.); Laird v. Murray, 111 S.W. 780 (Tex.Civ.App., 1908, err. ref.). But where the grantees, as here, enter in a contract assuming an obligation maturing in installments thereby giving rise to an implied lien on the land, limitations does not begin running until the maturity of the last installment. Article 5520, V.A.T.S.; Uvalde Rock Asphalt Co. v. Cartledge, 154 S.W. 2d 314 (Tex.Civ.App., Galveston, 1941, n. w. h.), citing cases.

The record reveals that at the time appellants and those under whom they claim accepted the deed, the debt owing the Gas Company consisted of (1) an installment debt in the amount of $3,645.76, and (2) a debt upon an open account in the amount of $201.65. The installment debt upon the air conditioning equipment was evidenced by a note and security agreement executed on February 2, 1967, payable in 48 monthly installments of $87.24 each, commencing on March 31, 1967. Thus the last installment thereon did not mature until March 31, 1971. Consequently, the installment debt would not have been barred by the four year statute of limitations until March 31, 1975.

■ The Gas Company set up its claim by its second amended original answer filed on November 30, 1972. By these pleadings the Gas Company sought affirmative relief upon its debt, asserted its equitable vendor's lien, and prayed for the enforcement of its lien against the funds on deposit in the registry of the County Court. While the company did not specifically denominate its claim as a counterclaim or a cross action, we are of the opinion that such pleading had the effect of suspending the running of the statute of limitations. 37 Tex.Jur.2d, Limitations of Actions, secs. 19 and 96. It therefore follows that the installment debt of $3,645.76 was not barred by the four year statute of limitations.

■ With regard to the debt due and owing the Gas Company for gas furnished upon the open account, the record shows that the sum of $201.65 was due and owing at the time the deed was executed in February, 1968. Since the company did not commence suit until it filed its pleading dated November 30, 1972, this part of the debt is obviously barred by the four year statute of limitations.

■ Finally, it is contended that the debt and lien asserted by the Gas Company is void because the company failed to comply with the provisions of the Texas Business and Commerce Code. The point is without merit and is overruled. Since Delley and Brown and those under whom they claim participated in the creation of the equitable lien, they were charged with knowledge of the prior lien. Not being innocent purchasers, the code affords them no protection.

In view of our ruling that the open account of $201.65 is barred by limitations, it becomes necessary that we reverse the judgment and remand the cause to the trial court with the instruction that the judgment be reformed so as to limit the Gas Company's recovery to the amount due under the installment contract, plus interest and attorney's fees stipulated therein.

### THE TITLE OF RUBY BROWN, ADMINISTRATRIX

The judgment awarded Ruby Watley Brown, individually and as administratrix of the Estate of Minnie Elizabeth Watley, jointly, seventy percent (70%) of the title and possession of the surface estate of the land and seventy percent (70%) of the funds in the Registry of the County Court, after the payment of the amount recovered by Arkansas Louisiana Gas Company.

At the time the present suit was filed, Ruby Watley Brown had not been appointed administratrix of her mother's estate. The first indication that she intended to apply for administration came several days

prior to trial on March 28, 1973, when Ruby Watley Brown, individually, filed a pleading alleging that she had made application for appointment as administratrix. The pleading purports to have been filed on behalf of the administratrix and alleges that as administratrix she sought a recovery of the undivided community interest in the two acre tract of land owned by her mother at the time of her death. The pleading filed in behalf of the administratrix requested that the trustee's deed conveying her mother's interest in the property to Earl Delley be set aside.

Appellant Delley contends that since Ruby Watley Brown failed to qualify as administratrix until several days after the trial of the present suit, the trial court erred in permitting her to intervene after the close of the evidence. We do not agree.

The record reveals that the case was tried and completed on April 4, 1973. After all parties had rested, the court took the matter under advisement. On April 10, 1973, Ruby Brown was finally appointed administratrix of her mother's estate. On the same day she filed a motion requesting the trial court to allow her to offer certified copies of her appointment and qualification as administratrix. While the motion was denominated a motion to offer additional evidence, the motion shows that what she was attempting to do was to intervene in the case. The motion stated that she desired to prove her appointment as administratrix in order to support the pleading filed on her behalf on March 28, 1973, wherein she sought title to the undivided community interest of Minnie Elizabeth Watley at the time of her death. Certified copies of her appointment, as well as her qualification as administratrix, were attached to the motion.

On April 23, 1973, the trial court granted the motion and admitted into evidence certified copies of the instruments showing Ruby Brown's appointment and qualification as administratrix. On May 9, 1973, the trial court rendered judgment.

Rule 270, Texas Rules of Civil Procedure, provides in part as follows:

"At any time the court may permit additional evidence to be offered where it clearly appears to be necessary to the due administration of justice. * * *"

Rule 60, Texas Rules of Civil Procedure, provides as follows:

"Any party may intervene, subject to being stricken out by the court for sufficient cause on the motion of the opposite party; and such intervenor shall, in accordance with Rule 72, notify the opposite party or his attorney of the filing of such pleadings within five days from the filing of same."

Delley does not contend he was not given notice of the motion, nor does he contend there was any irregularity in the appointment of the administratrix. At no time did he move to have the intervention stricken. His sole contention is that the court erred in failing to set the motion for hearing and affording him an opportunity to appear and contest the motion.

■ Generally, intervention is proper at any time before final decision on the merits. McDonald, Texas Civil Practice, Vol. 1, sec. 3.48. The question of whether the administratrix should have been permitted to intervene and offer evidence of her appointment constituted a matter within the discretion of the trial judge. Wofford v. Miller, 381 S.W.2d 640 (Tex.Civ. App., Corpus Christi, 1964, n.r.e.); Jones v. English, 235 S.W.2d 238 (Tex.Civ.App., San Antonio, 1950, err. dism.). Since Delley failed to move to strike the intervention, we think he waived his right to complain. Saulsbury v. Clay, 25 S.W.2d 200 (Tex.Civ.App., Amarillo, 1930, n.w.h.). At any rate, we are of the opinion that no abuse of discretion was shown.

■ This brings us to the question of whether the trial court erred in awarding the administratrix an undivided interest in the title to the land and funds in question.

It is undisputed that the administratrix was appointed within the four-year period allowed by the statute after the death of Minnie Elizabeth Watley. Upon being appointed she was authorized to take charge of the estate and protect the same. She therefore became a proper party to the pending litigation in that she had an interest in the judgment to be rendered therein. Her pleading in intervention shows she intended to adopt the pleading filed on March 28, 1973. Thus, we think her pleadings are sufficient to show that she sought to set aside the trustee's deed to Delley dated August 4, 1970, and sought to recover the one-half community interest owned by Minnie Elizabeth Watley at the time of her death on July 14, 1970. We agree with the trial court's ruling that Ruby Watley Brown, administratrix, was entitled to recover an interest in the land and funds.

It is now settled that where the mortgagee, as here, elects to have a forced sale made under the power conferred by the mortgage after the death of the mortgagor, the sale will be cancelled if within four years thereof an administration is opened and the administrator seeks cancellation. Pearce v. Stokes, 155 Tex. 564, 291 S.W.2d 309 (1956). This is the situation presented here. Consequently, the administratrix is entitled to recover the interest owned by Minnie Elizabeth Watley at the time of her death.

While we agree with the trial court's ruling that the administratrix was entitled to recover, we think the trial court erred in awarding the administratrix an undivided interest jointly with Ruby Watley Brown, individually. We think the trial court should have entered judgment awarding her the specific interest owned by Minnie Elizabeth Watley at the time of her death. We therefore reverse and remand this portion of the judgment with instructions that the judgment be reformed so as to award the administratrix a one-half interest in and to seventy percent (70%) of the land and the funds in question, after payment of the judgment in favor of the Gas Company.

## THE TITLE OF RUBY WATLEY BROWN, INDIVIDUALLY

As stated, the judgment awarded Ruby Watley Brown, individually, an undivided interest in seventy percent (70%) of the land and funds jointly with the administratrix of the Estate of Minnie Elizabeth Watley, deceased. The judgment in favor of Ruby Brown, individually, is based on the theory that upon the death of her father, W. W. Watley, she inherited his undivided one-half community interest in and to seventy percent (70%) of the land and that the subsequent trustee's deed to Delley was not effective to divest her of title in that the sale was invalid because the consideration paid by Delley was grossly inadequate.

Appellant Earl Delley urges that the trial court erred in setting aside the trustee's deed based solely on the finding that the consideration was grossly inadequate. We sustain the contention.

A trustee's sale will not be disturbed or set aside because the consideration was inadequate unless there are allegations and proof of irregularity, though slight, which irregularity caused or contributed to cause the property to be sold for a grossly inadequate price. Thornton v. Goodman, 216 S.W. 147 (Tex.Com.App., 1919); Sparkman v. McWhirter, 263 S.W. 2d 832 (Tex.Civ.App., Dallas, 1953, writ ref.); Tarrant Savings Association v. Lucky Homes, Inc., 390 S.W.2d 473 (Tex. Sup.1965); Smith v. Olney Federal Savings and Loan, 415 S.W.2d 515 (Tex.Civ. App., Eastland, 1967, n.w.h.). There is neither pleadings nor proof showing that the trustee's sale was unfairly held or that there was any irregularity which caused or contributed to cause the property to bring a low price. Delley therefore acquired title by virtue of the trustee's deed to the undivided one-half community interest in

seventy percent (70%) of the land inherited by Ruby Brown from her father, W. W. Watley, subject to administration being taken out on his estate within four years. It is undisputed that no administration has ever been opened on his estate. In these circumstances, the authorities hold that when a trustee's sale is made within four years after the death of the mortgagor, as here, and no administration is thereafter opened on the estate before the expiration of the four-year period allowed by the statute, title to the purchaser becomes absolute. Wiener v. Zwieb, 105 Tex. 262, 141 S.W. 771, 147 S.W. 867; Pearce v. Stokes, supra. Since no administration having been taken out on the Estate of W. W. Watley, Delley's title became absolute. Consequently, we are of the opinion that the trial court erred in awarding Ruby Brown, individually, the undivided one-half community interest emanating through W. W. Watley.

Accordingly, we reverse and remand this portion of the judgment with instructions to the trial court to enter a "take nothing" judgment against Ruby Watley Brown, individually.

## THE TITLE OF EARL DELLEY

 The judgment awarded Earl Delley title to thirty percent (30%) of the surface estate in the land and thirty percent (30%) of the funds on deposit in the registry of the County Court. The interest awarded Delley here is the thirty percent interest which he acquired in the deed from the Nursing Home to W. W. Watley and Earl Delley.

Ruby Brown contends that the trial court erred in granting Delley title to this thirty percent interest because she contends that the undisputed evidence shows that Delley agreed to pay her father, W. W. Watley, $6,000.00 for this interest, which he failed to pay. Therefore, she argues that since there was a failure of consideration, title to this thirty percent interest remained in her father and mother. No au-

thority is cited in support of this proposition. But irrespective of whether the legal proposition is sound or not, we have concluded the contention cannot be sustained because the record is devoid of any evidence to support a recovery on such theory.

The record shows that all testimony offered by Ruby Brown with regard to the alleged agreement between her father and Delley was excluded by the trial court on the ground that it violated the Dead Man's Statute. Article 3716, V.A.T.S. Delley denied making such agreement. He testified the thirty percent (30%) interest conveyed to him by the deed was in payment for work he performed for the Nursing Home prior to the execution of the deed. While he admitted that he had some negotiations with Watley regarding the purchasing of a thirty percent interest, he testified that these negotiations related to the purchase of an additional thirty percent interest and were terminated. As we view it, the foregoing testimony is factually and legally insufficient to raise any issue upon the alleged agreement.

We therefore agree with the trial court's ruling denying Ruby Watley Brown, individually and as administratrix, a recovery for the thirty percent interest conveyed Delley by the deed.

We hold that Delley acquired title to an undivided thirty percent interest in the land and funds on deposit by virtue of the deed executed by the Nursing Home, and further hold that Earl Delley acquired one-half interest in and to seventy percent (70%) of the title to the land and funds on deposit by virtue of the trustee's deed for the reason stated hereabove. The trial court is hereby instructed to enter judgment in his favor accordingly after payment of the judgment in favor of the Gas Company.

Other portions of the judgment relating to costs and the assessment of guardian ad litem fees are not disturbed.

It is ordinarily the duty of the appellate court to render the judgment which the trial court should have entered. However, in view of the fact that we must reverse and remand the case to the trial court for it to reform its judgment by re-computing the interest and attorney's fees upon the judgment awarded Arkansas Louisiana Gas Company, we deem it proper to reverse and remand the case as a whole so that a new judgment may be entered.

Accordingly, the judgment is reversed and the cause is remanded to the trial court with instructions to enter judgment in accordance with this opinion.